IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICK A. NICOCIA,                                    6:12-CV-00147-BR

       Plaintiff,                               OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.

KATHRYN TASSINARI
Drew L. Johnson, P.C.
1700 Valley River Drive, First Floor
Eugene, OR 97401
(541) 434-6466

       Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel, Region X, Seattle
**KEITH SIMONSON**
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
1301 Young Street, Ste A-702
Dallas, TX 75202
(214) 767-3459

       Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Nick A. Nicocia seeks judicial review of the Commissioner of Social Security's final decision denying his May 23, 2008, application for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-34.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** this matter to the Commissioner for further proceedings consistent with this Opinion and Order.


## ADMINISTRATIVE HISTORY

     Plaintiff protectively filed an application for DIB on May 23, 2008, alleging he has been unable to work since January 31, 2004, because of irritable bowel syndrome, hepatitis C, a bad back, lung disease, vertigo, sleep apnea,

depression, anger, anxiety, foot neuropathy because of pre-diabetes, and sleep apnea.  Tr. 114.  His application was denied initially on November 18, 2008, and on reconsideration on March 20, 2009.  Tr. 66-70 and 74-77.

On May 12, 2009, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  Tr. 78-79.

On June 30, 2010, the ALJ held a hearing on Plaintiff's DIB application.  Plaintiff and a vocational expert (VE) testified. Tr. 39-63.  At the hearing Plaintiff amended his alleged disability onset date to December 1, 2006.  Tr. 62.

On July 26, 2010, the ALJ issued a decision that Plaintiff is not disabled and is not entitled to DIB.  Tr. 12-20.

On November 29, 2011, the Appeals Council denied Plaintiff's request for review.  Tr. 1-4.  Accordingly, the ALJ's July 26, 2010, decision was the final decision of the Commissioner for purposes of review.

On January 26, 2012, Plaintiff filed a Complaint seeking judicial review of the Commissioner's final decision.


<u>**BACKGROUND**</u>

**I.** <u>**Plaintiff's Testimony**</u>**.**

Plaintiff testified at a hearing before the ALJ on June 30, 2010, and also completed a work-history report.  As of the hearing date, Plaintiff was 53 years old.

**A.   Education.**

Plaintiff has a high-school diploma and spent two years at a meat-cutter school.  Tr. 43.

**B.  Work History.**

Plaintiff worked exclusively as a meat cutter until 2004 when he quit because of back pain, numbness in his foot, and a "terrible stomach."  Plaintiff has not worked since then. Tr. 44.  Plaintiff last worked full-time in either 1991 or 1992. Tr. 49. Thereafter, he worked part-time only.  Tr. 49.

**C.  Health.**

Plaintiff's stomach problems make him feel miserable, and he has to take naps two or three times a day, especially on bad days.  Tr. 46.  He cannot stay in bed too long, however, because his back begins to hurt.  Tr. 46-47.

Plaintiff has had stomach problems since 1993 that cause him to have more bad days than good days.  He needs to lay down for up to "a couple of hours" five out of seven days a week.  Tr. 52-54.  Plaintiff has breathing problems and needs to gasp for air whenever he lifts anything.  Tr. 50.

Plaintiff also experiences foot numbness, which causes his feet to sting and to get cold.  He has to take off his shoes and wear slippers when that occurs, and he is only able to remain on his feet for up to 45 minutes at a time.  Tr. 50-51.

Plaintiff's daily activities include watching television, taking out the trash, doing a little housework, shopping, and puttering around his small flower garden.  Tr. 54.  He used to walk for exercise but doing so now irritates his feet due to his diabetes.  Tr. 55-56.  Plaintiff is depressed because of his back, foot, and stomach impairments.  Tr. 56-57.

Plaintiff does not take medications but does take supplements to help with his stomach problems.  Tr. 56.

## II. **Lay-Witness Evidence**.

Plaintiff's friend of 18 months provided a written report on Plaintiff's behalf.  Tr. 143-50.  The friend spends about one hour or less each day with Plaintiff watching television, eating, and talking.  Tr. 143.

Plaintiff complains he is unable to get a good night's sleep.  Tr. 144.  He prepares his own meals, cleans his home, does laundry, paints, does minor household repairs, and mows the lawn.  He needs help, however, with heavy lifting.  Tr. 145. He reads and watches television even though he is hard-of-hearing.  Tr. 147.

Plaintiff's impairments limit his ability to lift, squat, bend, stand, reach, walk, and kneel.  He is able to do light work, but he gets tired after "about 2 hours."  He has an "anger problem" that he is able to control.  Tr. 148.

III. **VE Testimony**.

The VE testified Plaintiff has a high-school education and has performed past relevant work as a meat cutter.  Tr. 58. Based on that history and a hypothetical from the ALJ that Plaintiff could occasionally lift 50 lbs and frequently lift 25 lbs; stand, sit, or walk for up to six hours in an eight-hour work-day with a sit/stand option every 30-60 minutes; and not climb ladder/rope/ scaffold; the VE opined Plaintiff would not be able to perform his past relevant work as a meat cutter.  Tr. 59.

The VE opined Plaintiff would be able to perform the jobs of electronics worker, survey worker, and storage-facility rental clerk.  Tr. 59.  If, however, Plaintiff was only able to stand or to walk for two hours in an eight-hour workday, would miss two or more days of work a month; and need to lie down for two hours at a time, he would not be employable on a competitive basis.  Tr. 60.

IV.  **Medical Treatment Evidence**.

A.  **Antelope Valley Hospital Medical Center**.

In May 1995 and May 1997 MRIs taken of Plaintiff's lumbar spine showed mild to moderate degenerative changes with moderate to severe neural canal stenosis.  Tr. 200-05.

B.  **Russell Greif, D.O.**

In February 2002 Dr. Greif began treating Plaintiff for

abdominal discomfort that had persisted for ten years.  Dr. Greif
diagnosed Plaintiff with antral gastritis, an autoimmune
disorder.  Tr. 263-65.

In April 2002 Plaintiff's abdominal discomfort was much
improved.  Tr. 260.  In June 2002, however, Plaintiff experienced
"persistent" nausea and abdominal discomfort.  Tr. 256.

From September to November 2002 Plaintiff reported he was
depressed and continued to experience abdominal discomfort,
nausea "at times," and shortness of breath and dizziness after
physical activity.  Tr. 246-51.  In December 2002, however,
Plaintiff reported his dizziness was "much improved" although
he continued to experience shortness of breath.  Tr. 240-44.
In February and June 2003 Plaintiff continued to experience
shortness of breath following exertion.  Tr. 234, 238.

In July 2003 Plaintiff was depressed because of his mother's
illness.  Tr. 232.

In February 2004 Plaintiff felt "very fatigued" and asked
Dr. Greif to place him on permanent disability status because his
"back hurts."  Plaintiff had only taken pain medication on two
occasions, and his back did not hurt at that time.  Tr. 224.

In March 2004 Plaintiff again asked Dr. Greif to fill out
disability papers for him.  Plaintiff continued to complain about
shortness of breath, but he only had back pain at work.  He did
not want to take pain medication.  Tr. 221.  Plaintiff had passed

out days earlier in Las Vegas after drinking two beers and five tequilas and was depressed.  Tr. 221.  Dr. Greif suggested he take Celobrex to ease his back pain, but Plaintiff chose not to do so because "his back [was] feeling okay."  Tr. 221

### C.  Doddanna Krishna, M.D. - Pulmonary Medicine.

Dr. Krishna treated Plaintiff from April 2002-June 2004 for sleep apnea.  On June 28, 2004, Dr. Krishna completed a Claim for Disability Insurance Benefits in which she listed Plaintiff's impairments as shortness of breath, abdominal pain severe, fatigue, sleep apnea, microbacterium giordane, and depression. She stated Plaintiff had been unable to perform his "regular or customary work" from March 29, 2004, until June 28, 2004, and was then released to return to work.  Tr. 318.

### D.  North Valley Sleep Disorders Center.

In December 2002 when tested for sleep apnea, Plaintiff was diagnosed with "Obstructive Sleep Apnea, very severe, and light to heavy snoring."  Tr. 209.  Plaintiff was advised to lose weight in order to "reduce his sleep apnea and positive pressure needs during sleep."  Tr. 209.

### E.  Charles L. Christensen, M.D. - Internal Medicine.

From January 2006-October 2006 Dr. Christensen treated Plaintiff for hypertension, hyperlipidemia, obesity, sleep apnea, hepatitis C, and "a strong likelihood of metabolic syndrome or

even overt diabetes." Tr. 406. Dr. Christensen described
Plaintiff's past medical history as including "chronic back pain
with MRI not showing anything surgical other than some bulging
discs and degenerative changes *by his history*." Tr. 405
(emphasis added). Plaintiff had difficulty losing weight even
after he quit drinking alcohol. Tr. 405. He had occasional
intense rectal pain, foot numbness, back pain, and volatile mood
changes when he ran out of medication. Tr 405.

**V.   Mental Health Treatment Evidence.**

   **A.  Roy Del Rosario, M.D. - Psychiatrist.**

   In June 2004 psychiatrist Roy Del Rosario, M.D., began
treating Plaintiff for mood swings associated with irritability,
alcohol use, rage, hopelessness, and anhedonia (inability to
experience pleasure). Tr. 396. Dr. Del Rosario diagnosed
Plaintiff with Bipolar I Disorder and Depression and assigned
Plaintiff a GAF[1] score of 50 (serious impairment in social,
occupational, and school functioning). Plaintiff's depression
lessened after he started taking Effexor. Tr. 395.

   In November 2004 Plaintiff suffered from a bad back, but he
was sleeping well and losing weight. He was unable to find a
job. Tr. 393.

_____

   [1] A Global Assessment of Functioning (GAF) score rates a
person's psychological, social, and occupational functioning on a
hypothetical continuum of mental-health illness. *See* Diagnostic
and Statistical Manual (DSM-1V) at 34.

**b.  PeaceHealth-Health Associates.**

In February 2009 Plaintiff described his medical history as including hypertension, hyperlipidemia, diabetes, hepatitis C, chronic depression with anxiety, sleep problems, fatigue, and stress.  Tr. 449.  He also reported he regularly drank red wine in unspecified amounts and had used recreational drugs in the past.  He was "rather dysthymic" with a "blunted affect" on examination, but both his insight and judgment were "fair."  Tr. 450.

In March 2009 Plaintiff's Zoloft prescription was increased because he was experiencing more anxiety and had difficulty sleeping.  Tr. 446.

**VI.  Medical-Examination Evidence.**

**DeWayde C. Perry, M.D.**

In October 2008 Dr. Perry examined Plaintiff on behalf of the Commissioner, but he did not review Plaintiff's medical records.  Dr. Perry noted Plaintiff was 5'5½" tall and weighed 228 lbs.  Dr. Perry  diagnosed Plaintiff as being obese with diabetic neuropathy in the right foot.  He opined Plaintiff did not have any restrictions in his ability to sit, to stand, or to walk during an eight-hour day; did not need assistive devices; and had no lifting or carrying, postural, manipulative, or environmental limitations.  Tr. 429-33.

VII. **Medical-Consultation Evidence**.

    **Linda Jensen, M.D. - Pain Medicine Specialist**
    **Sharon B. Eder, M.D. - Internal Medicine**

Dr. Jensen reviewed Plaintiff's medical records on behalf of the Commissioner, concurred in Dr. Perry's evaluation, and opined Plaintiff has nonsevere physical impairments.  Tr. 435. Dr. Eder concurred in Dr. Jensen's assessment.  Tr. 444.

VIII. **Mental-Health Consultation Evidence**.

    **Carmen Brummet**
    **Deborah A. Keller**

Brummet and Keller reviewed Plaintiff's medical records on behalf of the Commissioner and opined Plaintiff does not have any medically determinable mental impairments.  Neither their educational degrees not their areas of medical practice are identified in the record.  Keller identifies a specialty code of "DA2."  Tr. 443.

On this inadequate record, the Court does not have a basis to determine whether either of these mental-health consultants is qualified to offer an opinion in this case as to Plaintiff's mental health.  Accordingly, the Court has not considered their consulting records or opinions.

**STANDARDS**

The initial burden of proof is on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir.

11 - OPINION AND ORDER

2005).  To meet this burden, a claimant must prove his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational

interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1521. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1521.

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1521(a)(4(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the Listed Impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454

F.3d at 1052.  The criteria for Listed Impairments are enumerated in 20 C.F.R. part 404, subpart P, appendix 1.  *See also* 20 C.F.R. § 404.1520(d).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  Assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

14 - OPINION AND ORDER

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## THE ALJ'S FINDINGS

In Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity from December 1, 2006, the alleged onset date of his disability, and March 31, 2009, the date he was last insured. Tr. 14.

In Step Two, the ALJ found Plaintiff at all material times had severe physical impairments related to diabetic foot neuropathy and obesity. Tr. 14.

In Step Three, the ALJ found Plaintiff's impairments do not meet or equal any Listed Impairment. The ALJ found Plaintiff has the RFC to perform a limited range of medium work that includes

15 - OPINION AND ORDER

lifting or carrying 50 lbs occasionally and 25 lbs frequently;
standing, sitting, and/or walking six hours in an eight-hour
workday; no climbing of ropes, scaffolds, or ladders; and the
option to sit or stand with position changes every 30 to 60
minutes.  Tr. 16.

Based on these findings, the ALJ concluded Plaintiff is
unable to perform his past relevant work as a meat cutter.
Tr. 18.  At Step Four, the ALJ found jobs exist in significant
numbers in the national economy that Plaintiff is able to perform
such as electronics worker, survey worker, and storage-facility
Clerk.  Tr. 19.

Accordingly, the ALJ found Plaintiff is not disabled and,
therefore, is not entitled to DIB.  Tr. 30.


## DISCUSSION

Plaintiff contends the ALJ erred by failing (1) to give
clear and convincing reasons for rejecting Plaintiff's testimony;
(2) to adequately consider Plaintiff's degenerative disc disease;
(3) to order a psychological evaluation of Plaintiff; (4) to
assess Plaintiff's RFC adequately; and (5) to find Plaintiff is
not capable of performing "other work" in the national economy.

**I.   Plaintiff's Credibility.**

The ALJ concluded Plaintiff's statements as to the
persistence, intensity, and limiting effects of his allegedly

disabling symptoms not credible because they were "inconsistent" with the ALJ's assessment of Plaintiff's RFC.  The ALJ based his conclusion on (1) Plaintiff's "sparse medical care" from 2004 to February 2009, (2) the disparity between Plaintiff's "self-reporting" regarding the alleged severity of symptoms and the objective medical evidence, and (3) Plaintiff's statements about his limitations when compared to his daily living activities.

**A.  Standards**.

In *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986), the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptoms.  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen,* 80 F.3d at 1284. If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester,* 81 F.3d 821, 834 (9th Cir. 1995).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must specifically

identify what testimony is not credible and what evidence undermines the claimant's complaints. *Parra,* 481 F.3d at 750 (quoting *Lester,* 81 F.3d 821 at 834).

**B.   Analysis.**

1.   Plaintiff's "sparse medical care" from November 2004 to February 2009.

The ALJ found Plaintiff's record of treatment was sparse from November 2004 to February 2009 even though Plaintiff asserted the onset date of his alleged disability is January 2006.  The ALJ noted while "financial constraints likely impacted the claimant's ability to obtain medical care . . . [s]uch a significant lapse in medical treatment for the time period in issue is inconsistent with disabling symptoms" and "raise[s] a significant credibility concern."  Tr. 16, 17.

The Commissioner concedes the ALJ "misstated" when he found Plaintiff did not seek treatment for more than four years from November 2004 to February 2009 because, in fact, it was a period of only 14 months from November 2004 to January 2006. Nevertheless, the Commissioner argues the misstatement was harmless because even though Plaintiff had insurance coverage during the shorter 14-month period, he still did not seek treatment during that period.

Plaintiff, however, argues the ALJ's error was not harmless unless the Court concludes no reasonable ALJ who

understood the facts correctly could have reached a different
disability determination.  *See Stout v. Comm'r,* 454 F.3d 1050,
1056 (9th Cir 2005).

The Court notes the record reflects from January 2006 to
October 2006 Dr. Christensen treated Plaintiff for hypertension,
hyper-lipidemia, obesity, sleep apnea, hepatitis C, and "a strong
likelihood of metabolic syndrome or even overt diabetes."  The
ALJ's apparent failure to take this substantial medical treatment
into account in evaluating Plaintiff's credibility is not
harmless error as argued by the Commissioner.  *See Stout v.
Commissioner,* 454 F.3d 1050, 1054 (9th Cir. 2006)(failure to
"comment on competent testimony" is not harmless error).
Moreover, such evidence is relevant in determining the severity
of Plaintiff's impairments after the alleged onset date of his
disability and in evaluating Plaintiff's credibility in
describing those impairments.

2.   Plaintiff's foot impairment.

The ALJ did not find Plaintiff's statements credible
as to the severity and limiting effects of the alleged numbness
in his right foot primarily because Plaintiff, according to
Dr. Perry, appeared to be sitting comfortably on an examining
table during the consultative examination performed by Dr. Perry
and did not have any difficulty getting on or off the table.
Tr. 17.

19 - OPINION AND ORDER

In addition, the ALJ relied on the report of Dr. Jensen and Dr. Eder, both of whom reviewed Plaintiff's medical records and concluded Plaintiff did not have any severe physical impairments.  Tr. 17.

As noted, Dr. Perry found Plaintiff had "decreased pinprick of the plantar aspect of the right foot," and he diagnosed Plaintiff as having "diabetic neuropathy" in that foot. Nevertheless, Dr. Perry opined Plaintiff did not have any restrictions related to his ability to stand or to walk based on Dr. Perry's observations during the examination.  Although the ALJ found Plaintiff's diabetic neuropathy in his right foot was a severe impairment, he did not assign physical limitations to that impairment in light of Dr. Perry's observations of Plaintiff's ability to get on and off the examining table during Dr. Perry's examination of Plaintiff.

On this record the Court concludes the ALJ's reliance on Dr. Perry's observations of Plaintiff as the basis for the ALJ's conclusion that Plaintiff was not credible in describing his limitations was unreasonable in light of the ALJ's finding that Plaintiff's foot impairment was severe.  The Court also concludes the ALJ's reliance on the consulting reports of Drs. Jensen and Eder was unreasonable because their opinions were based on Dr. Perry's observation and the conclusion he drew from that observation.

20 – OPINION AND ORDER

Accordingly, the Court concludes the ALJ erred when he did not provide legally sufficient reasons supported by substantial evidence in the record for finding Plaintiff's statements not credible as to the limitations arising from his foot impairment.

## II.  **Plaintiff's Degenerative Disc Disease**.

Plaintiff contends the ALJ erred in his disability analysis by not adequately addressing Plaintiff's workplace limitations caused by degenerative disc disease.

### A.  **Standards**.

When determining a claimant's RFC, the ALJ must consider all of the claimant's impairments, including impairments that are not severe.  *Carmickle v. Comm'r Soc. Sec. Admin*., 533 F.3d 1155, 1164 (9th Cir. 2008)(citing SSR 96-8p).

### B.  **Analysis**.

An MRI taken in 1997 showed Plaintiff had a disc protrusion at L4-5 with spurring and osteophytes, foraminal stenosis, and a protrusion at L3-4 with effacement of the thecal sac.  Tr. 200.

The medical record is sparse regarding any treatment Plaintiff may have received for back pain since 1997.  In July 2006 following his examination of Plaintiff, Dr. Christensen noted Plaintiff exhibited "[c]hronic back pain with right foot numbness, suspect of a discogenic nerve root basis."  Tr. 404. Dr. Christensen recommended another MRI if Plaintiff's "foot or

back symptoms worsen."  Tr. 404.

The Court has already concluded the ALJ erred when he failed to adequately consider the medical evidence from November 2004. Similarly, the Court concludes the ALJ also erred when he failed to take into account Dr. Christensen's treatment records from July 2006 relating to Plaintiff's low-back pain.

**III.  Plaintiff's Psychological Impairments.**

Prior to the hearing before the ALJ, Plaintiff's counsel requested the ALJ to order a psychological evaluation of Plaintiff based on Dr. Del Rosario's 2004 diagnosis of Plaintiff as having Bipolar I Disorder and depression and his opinion that Plaintiff had a GAF score of 50 (serious impairment in social, occupational, and school functioning).  The ALJ did not address Plaintiff's request.

**A.  Standards.**

"The Commissioner 'has broad latitude in ordering a consultative examination.'  The government is not required to bear the expense of an examination for every claimant.  *See generally* 20 C.F.R. §§ 404.1517-1519t, 416.917-919t."  *Reed v. Massanari,* 270 F.3d 838, 842 (9th Cir. 2001)(internal citations omitted).  "Some kinds of cases, however, do 'normally require a consultative examination,' including those in which 'additional evidence needed is not contained in the records of [the claimant's] medical sources,' and those involving an 'ambiguity

22 - OPINION AND ORDER

or insufficiency in the evidence [that] must be resolved.'"  *Id*.
*See also Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997)
("[A] consultative examination is often required for proper
resolution of a disability claim."); 20 C.F.R. § 404.1519a(b)(1)
and (4); 20 C.F.R. § 416.919a(b)(1) and(4).

   **B.  Analysis.**

   Plaintiff contends the ALJ erred by not ordering a
consultative psychological examination of Plaintiff.  As part of
his Step Two analysis, the ALJ found "there are no objective
mental findings to establish significant functional limitations."
Tr. 15.  The ALJ noted "only a very limited mental status exam"
had been done, but it reflected Plaintiff had "fair insight and
judgment as well as goal directed thought process."  Tr. 15.
The ALJ also noted the "state agency's evaluators found that
[Plaintiff] had no medically determinable mental impairment."
Tr. 15.

   The Court has already pointed out that the qualifications of
the "state agency's evaluators" are not identified in the record,
and, therefore, the Court does not have a basis to weigh their
opinions.  In any event, the Court concludes Dr. Del Rosario's
evaluation of Plaintiff's mental-health issues in 2004 raises, at
a minimum, a substantial issue as to whether Plaintiff has
ongoing mental-health issues that affect his ability to engage in
substantial gainful activity.

In light of the absence of any psychological evidence after 2004 and the inadequacy of the Commissioner's review of Plaintiff's mental-health status to date, the Court concludes the ALJ erred when he ignored Plaintiff's request for a consultative mental-health examination.

## IV.  **Plaintiff's RFC**.

The ALJ found Plaintiff had the RFC to perform a limited range of medium work lifting or carrying 50 lbs. occasionally and 25 lbs. frequently; standing/sitting and/or walking six hours in an eight-hour workday; no climbing of ropes, scaffolds, or ladders; and with the option to sit or to stand with position changes every 30 to 60 minutes.

### A.  **Standards**.

An RFC finding must be premised on the proper legal standards and supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)**.**

### B.  **Analysis**.

Plaintiff contends the ALJ did not take into account Plaintiff's mental limitations, his "back condition," nor his "diabetic neuropathy" when the ALJ determined Plaintiff's RFC, and, therefore, that RFC was not supported by substantial evidence in the record.  The Court agrees.

Based on the foregoing, the Court concludes the ALJ

erred in his evaluation of Plaintiff's RFC as to Plaintiff's physical impairments and also erred by not fully developing the record as to Plaintiff's mental impairments and the impact of those impairments on Plaintiff's ability to engage in substantial gainful activity.

## V.  **Plaintiff's Ability to Perform "Other Work."**

The ALJ found Plaintiff could no longer perform his past relevant work as a meat cutter.  Plaintiff asserts the burden, therefore, shifted to ALJ to prove that Plaintiff is capable of substantial gainful activity.  Plaintiff argues the ALJ did not meet that burden.

### A.  Standards.

If a Social Security claimant can no longer perform past relevant work, the ALJ at Step Five of the evaluation must consider whether the claimant can perform any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v). While the claimant carries the burden of proving eligibility at Steps One through Four, the burden at Step Five rests on the agency.  *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Claimants not disqualified at Step Five are eligible for disability benefits.  *Id*.

### B.  Analysis.

The Commissioner contends he met his burden to establish that Plaintiff could perform other work in the national economy

based in large part on Plaintiff's conflicting statements to his
treating physicians that undermined his credibility regarding the
severity of those purported impairments.

As noted, the Court has already concluded the ALJ erred in
(1) adversely judging Plaintiff's credibility without taking into
account the substantial medical treatment that Plaintiff received
from November 2004 to February 2009; (2) not providing legally
sufficient reasons supported by substantial evidence in the
record for discrediting Plaintiff's testimony regarding the
severity of his foot impairment; (3) failing to consider
Dr. Christensen's treatment records in July 2006 related to
Plaintiff's complaint of low-back pain; and (4) ignoring
Plaintiff's request for a consultative mental-health examination.
The Court, therefore, concludes on this record that the ALJ also
erred when he found Plaintiff is capable of performing other work
in the national economy based on the ALJ's inadequate evaluation
of the medical evidence and Plaintiff's testimony.

Nevertheless, even though the Court concludes the ALJ did
not meet his burden to prove that Plaintiff is capable of
performing work in the national economy, a substantial question
remains regarding the extent to which Plaintiff may have any
limitations arising from mental impairments, diabetic neuropathy,
or back pain and the possible impact of any such limitations on
Plaintiff's ability to engage in work in the national economy.

**REMAND**

The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). If, however, "a rehearing would simply delay receipt of benefits, reversal is appropriate." *Id*.

Based on the record, the Court, in the exercise of its discretion, concludes this matter should be remanded to the Commissioner for further proceedings. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

On remand the Commissioner shall reconsider the medical evidence for the period from November 2004 through February 2009, including medical evidence related to Plaintiff's foot impairment and low back pain, and order a psychological evaluation of Plaintiff. The Commissioner shall then reconsider

27 - OPINION AND ORDER

Plaintiff's credibility in light of that evidence and reconsider whether Plaintiff is capable of engaging in substantial gainful activity.

### CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner for further proceedings consistent with this Opinion and order pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 8th day of February, 2013.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge